IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HARVEY W. HANSEN, | : | |
| Plaintiff, | : : : | |
| v. | : | C. A. No. 09-266 (LPS-MPT) |
| E. I. DU PONT DE NEMOURS AND COMPANY, | : : : : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

This matter arises out of a complaint filed by Harvey W. Hansen ("plaintiff") against E. I. Du Pont De Nemours and Company ("defendant"). Plaintiff alleges discrimination based on a perceived disability by defendant in violation of the Americans with Disabilities Act ("ADA") and also asserts claims for defamation. Defendant currently seeks summary judgment.

## II. BACKGROUND

### A. Procedural Posture

This action was initiated on April 22, 2009, via a *pro se* complaint against defendant. On October 19, 2009, defendant filed an answer to plaintiff's complaint and raised six affirmative defenses: (1) plaintiff failed to state a cause of action for which relief may be granted; (2) defendant's conduct toward and treatment of plaintiff was at all times based upon reasonable, legitimate, and non-discriminatory business reasons; (3) any injury suffered by plaintiff does not constitute emotional distress; (4) plaintiff is

not entitled to punitive damages; (5) plaintiff has failed to mitigate damages he alleges he has suffered; and (6) plaintiff has sustained no damages, no financial loss, or any other injury. The parties have completed written discovery and conducted fact depositions.

On September 30, 2010, defendant filed a motion for summary judgment pursuant to FED. R. CIV. P. 56. Plaintiff filed an answering brief in opposition on October 18, 2010, to which defendant filed a reply brief on October 28, 2010. Defendant's motion for summary judgment is presently under consideration.

**B. Statement of Facts**

Plaintiff was an employee of defendant from December 1989 until May 2007.[1] On March 8, 2007, plaintiff engaged in a conversation with a co-worker that included potentially threatening statements.[2] This conversation went unreported by the co-worker until later in the month when an investigation was initiated by defendant, at the request of plaintiff, into a rumor that plaintiff did not wash his hands after using the restroom.[3] During this investigation, defendant interviewed several co-workers and ultimately determined that there was insufficient evidence to support the allegations. Additionally, defendant learned of the potentially threatening conversation that occurred on March 8 and immediately attempted to resolve the issue by asking plaintiff to

---

[1] D.I. 67 at 1.
[2] *Id.* at 2. The statements made by plaintiff included the repeated use of F**K in relation to other workers. The statement that garnered the most consternation was when plaintiff said he was going to "beat the F*****G S**T" out of a member of a group he regarded as a "Click [sic] Group."
[3] *Id.* This investigation was initiated in response to an alleged "People Treatment Incident."

apologize for the inappropriate remarks. He refused.[4]

Upon refusal by plaintiff to apologize, defendant engaged its Global Director of Operations Security ("Security") for information on how to properly proceed with an investigation. The first step was to obtain a written statement of the alleged threatening conversation.[5] The written statement was received on May 15, 2007 and it was determined that a threat management investigation was in order. On May 16, 2007, defendant informed plaintiff that he was temporarily suspended pending the outcome of the investigation. As part of the investigation, and consistent with company protocol, plaintiff was informed that he was required to undergo a fitness for duty assessment at the Rockford Center.[6]

Initially, plaintiff refused to attend the assessment, but ultimately scheduled an appointment for the morning of Friday, May 25, 2007. Plaintiff was seen by a counselor at the Rockford Center who performed the assessment and provided plaintiff with a form entitled "Referral/Recommendations for Service" at the conclusion.[7] Later the same day, plaintiff received a call from the Rockford Center and was informed that it was necessary for him to return. Due to the fact that it was the Memorial Day holiday weekend, he was not able to schedule the return appointment until Tuesday, May 29, 2007. That Tuesday morning, plaintiff scheduled the appointment, but then, almost immediately, changed his mind.[8]

---

[4] *Id.* at 3.
[5] *Id.*
[6] *Id.* at 4.
[7] *Id.* The counselor indicated on the form, "No recommendations - Based on clinical given."
[8] *Id.* at 5.

Subsequently, plaintiff refused to return to the Rockford Center and did not remit the form, given to him at the conclusion of his visit on May 25, to defendant.[9] He was aware that his failure to do so would result in his voluntary resignation from his employment, and on Thursday, May 31, 2007, plaintiff received a letter from defendant which reflected the same.[10]

In addition to the ADA claim arising from the above-mentioned facts, plaintiff asserts several allegations of defamation based on statements made by defendant and co-workers. The first statement was made in December 2006. According to plaintiff, a co-worker allegedly spread a rumor that "a man from PA was admitted to Jennersville [hospital] with an object lodged in his rectum."[11] Plaintiff asserts that the comment referenced him because he resides in Pennsylvania and was in the same hospital.[12] Secondly, plaintiff claims a rumor was spread about him in January 2007 with regard to his hygiene. Allegedly, another co-worker made a comment that he did not wash his hands after using the lavatory.[13] Third, plaintiff cites the notes of Du Pont's Global Manager of Records & Information Management ("Records & Information Management"), prepared in March 2007, which state: "Mr. Hansen often goes into people's offices while they aren't there and snoops."[14] Fourth, plaintiff posits the

---

[9] *Id.* at 4. In fact, plaintiff did not send a copy of the form from the Rockford Center to defendant until December 2007, seven months after his employment ended.
[10] *Id.*
[11] *Id.* at 19.
[12] *Id.* Plaintiff admits his name was never mentioned or connected to the incident relayed by the co-worker.
[13] *Id.* at 16.
[14] *Id.* at 15. The notes referenced were taken during the investigation of the "People Treatment Incident." The investigation was initiated after plaintiff complained to management about the hand-washing rumor. During the course of this investigation,

4

complaint made in March 2007 by a co-worker, that he threatened others in the office, was slanderous.[15] Fifth, plaintiff points to a comment made in March 2007, by Du Pont's Records & Information Management, saying he "didn't believe" plaintiff at the conclusion of the "People Treatment Incident" investigation.[16]

The sixth and seventh alleged defamatory statements occurred in May 2007 as a result of the investigation into the alleged threatening remarks made by plaintiff to fellow co-workers.[17] Plaintiff claims defendant made slanderous remarks that he was "'arrogant' and prone to 'violent outbursts.'"[18] And finally, plaintiff implicates two emails written by Du Pont's Security, which mentioned that an unknown individual at the Rockford Center (not defendant) referred to plaintiff as "guarded and minimizing" and that the Rockford Center "had planned on admitting [plaintiff] to their day program."[19]

## III. DISCUSSION

### A. Standards of Review

#### 1. Summary Judgment

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."[20] Once there has been adequate time for discovery, Rule 56(c) mandates judgment against the party

---

defendant learned of the threatening nature of the conversation that resulted in plaintiff being referred to the Rockford Center.

[15] *Id.* at 16.
[16] *Id.* at 17.
[17] *Id.* at 18-19. *See also supra* note 2.
[18] *Id.* at 18.
[19] *Id.* at 18-19.
[20] FED. R. CIV. P. 56(c)(2).

who "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[21] When a party fails to make such a showing, "there can be no 'genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[22] The moving party is therefore entitled to judgment as a matter of law because "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[23] A dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[24]

The moving party bears the initial burden of identifying portions of the record which demonstrate the absence of a genuine issue of material fact.[25] However, a party may move for summary judgment with or without supporting affidavits.[26] Therefore, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence supporting the nonmoving party's case."[27]

If the moving party has demonstrated an absence of material fact, the nonmoving party must then "come forward with specific facts showing that there is a genuine issue

---

[21] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[22] *Id.* at 323.
[23] *Id.*
[24] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[25] *Celotex*, 477 U.S. at 323.
[26] *Id.*
[27] *Id.* at 325.

for trial."[28] If the nonmoving party bears the burden of proof at trial, he "must go beyond the pleadings in order to survive a motion for summary judgment."[29] That party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial."[30] At the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."[31] Further, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[32] The threshold inquiry therefore is "determining whether there is a need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[33]

### 2. Pro Se Litigant

Because plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."[34] However, "[m]erely because a non-moving party is proceeding *pro se* does not relieve him of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact."[35]

---

[28] FED. R. CIV. P. 56(c).
[29] *Yeager's Fuel v. Pennsylvania Power & Light Co.*, 22 F.3d 1260, 1273 (3d Cir. 1994).
[30] *Anderson*, 477 U.S. at 248.
[31] *Id.* at 249.
[32] *Id.*
[33] *Id.* at 250.
[34] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[35] *See Boykins v. Lucent Technologies, Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000).

7

**B. Analysis**

**1. ADA Claim**

Plaintiff's ADA claim fails because he has not produced sufficient evidence demonstrating a disability within the meaning of the ADA.[36] Under 42 U.S.C. § 12112(a):

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.[37]

In order to establish a cause of action under the ADA, a plaintiff must be a "qualified individual with a disability."[38] A disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."[39] One such activity includes "working" which plaintiff claims is applicable here.[40] The disabling impairment must one of "permanent or long-term impact" that "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."[41] However, if a plaintiff asserts he does not have a disability, as is the case here, the ADA applies to those who are "regarded as having such an

---

[36] To establish a claim for disability discrimination under the ADA, "a plaintiff must first establish that he or she (1) has a disability (2) is a qualified individual and (3) suffered an adverse employment decision because of that disability." *Dismore v. Seaford School Dist.,* 532 F. Supp. 2d 656, 661 (D. Del. 2008).
[37] 42 U.S.C. § 12112(a) (2010).
[38] *Marinelli v. City of Erie*, 216 F.3d 354, 363 (3d Cir. 2000); 42 U.S.C. § 12112(a).
[39] 42 U.S.C. § 12102(2)(A) (2010).
[40] *Id.*
[41] *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002).

impairment."[42]

When a plaintiff meets the burden of showing the elements under the ADA, the analysis turns to whether a plaintiff has put forth direct or circumstantial evidence of discrimination.[43] This pretext theory, which incorporates the burden-shifting analysis of *McDonnell Douglas Corp.*,[44] is applied in the situation where a plaintiff relies on circumstantial evidence. Since plaintiff has not provided any direct evidence of discrimination, it appears that he is relying on circumstantial evidence.

If a plaintiff establishes a *prima facie* case of discrimination, under the burden-shifting analysis, "the burden of production shifts to the defendant, who must articulate some legitimate, nondiscriminatory reason for the adverse employment decision."[45] Should the defendant so succeed, then "the burden switches back to the plaintiff to demonstrate that the defendant's reasons are merely pretext for discrimination."[46] Thus, under the summary judgment analysis, to avoid judgment in favor of defendant, plaintiff must show some evidence which allows the factfinder to "reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[47]

Plaintiff has not presented any evidence establishing the essential elements of

---

[42] 42 U.S.C. § 12102(1)(C) (2010)
[43] *Dismore*, 532 F. Supp. 2d at 662.
[44] *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973).
[45] *Id.*
[46] *Id.*
[47] *Id.*

9

his ADA claim.[48] He has failed to show that he was disabled; that defendant regarded him as such; or that any adverse employment action occurred as a result of his purported disability. Nothing he has argued establishes that he was regarded as disabled–having an impairment which rises to the level of substantially limiting and severely restricting– by defendant. Plaintiff indicates that he is substantially limited in the major life activity of working,[49] but this conclusion is unsupported because he has failed to provide any evidence of a disability, either real or perceived. Further, there is no evidence of any adverse employment action because of a disability. In fact, in his deposition and throughout discovery, plaintiff asserted that the reason he was terminated was because defendant did not like him and there were too many employees in the department.[50] Such evidence supports a non-discriminatory basis for his termination.

In short, the actions of defendant, cited by plaintiff as discriminatory, are merely reasonable precautionary measures taken by an employer concerned for the general well-being and safety of the work environment. Defendant's reasons for requiring plaintiff to undergo a fitness for duty examination are uncontroverted and evinces a legitimate, nondiscriminatory explanation. As noted by defendant and unrefuted by plaintiff, the fitness for duty examination was consistent with defendant's policies and

---

[48] Although plaintiff has not shown a *prima facie* case of discrimination, by failing to provide evidence to support the elements of an ADA claim, the court will continue its analysis under the *McDonnell Douglas* standard.

[49] That plaintiff is no longer employed with defendant does not prove that he has a disability or that defendant perceived him as disabled.

[50] D.I. 67 at 11.

10

was "to determine whether plaintiff was capable of working in his current position."[51] Such examinations are allowed under federal regulations if job related and consistent with business necessity.[52] Plaintiff's employment ended when he refused to participate in a threat management investigation in response to his threats of bodily harm on a co-worker. Such conduct supports a legitimate business reason for requiring an evaluation to ensure that plaintiff was not a danger to himself or others.

Thus, plaintiff has not proven any element under the ADA, including perceived as disabled, and no genuine issue of material fact exists. Accordingly, defendant's motion for summary judgment should be granted.

### 2. Defamation Claim

Under Delaware law "an action to recover damages for . . . slander is 'an action for the recovery of damages for alleged personal injuries' and such actions are barred after the expiration of two years from the date the alleged . . . slanderous statement [was] made."[53] Plaintiff filed this action on April 22, 2009. Therefore, the purported statements made prior to April 22, 2007 are barred by the two year limitations period. With regard to those statements, defendant's motion for summary judgment should be granted.

To properly establish a viable cause of action for defamation in Delaware, a plaintiff must show that the defendant made a

---

[51] *Id.* at 10.
[52] *See* 29 C.F.R. § 1630.14(c) ("A covered entity may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity.").
[53] *Read v. Baker*, 430 F. Supp. 472, 476-77 (D. Del. 1977).

11

> false and defamatory statement of fact concerning the plaintiff . . . in an unprivileged publication to a third party. A statement is not defamatory unless it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.[54]

"[T]he general rule is that oral defamation is not actionable without special damages."[55] However, where the defamatory oral statement "(1) malign[s] one in a trade, business or profession, (2) impute[s] a crime, (3) impl[ies] that one has a loathsome disease, or (4) impute[s] unchastity to a woman," a cause of action for slander can exist without proof of special damages.[56]

"Delaware law has established that some defamatory statements may fall within a privileged class for which no damages may be recovered."[57] Statements of opinion, as opposed to fact, are protected by the First Amendment and are not actionable as defamatory.[58] Plaintiff alleges that fellow employees made slanderous remarks about him to each other. The statements communicated in May 2007 to other employees that plaintiff was "'arrogant' and prone to 'violent outbursts,'" are not defamatory because they are opinion as opposed to fact.[59] While plaintiff argues that the comments maligned him in his trade or profession, there is no evidence that the alleged statements

---

[54] *Ramunno v. Cawley*, 705 A.2d 1029, 1035 (Del. 1998) (internal quotations omitted).
[55] *Spence v. Funk*, 396 A.2d 967, 970 (Del. 1978).
[56] *Id.*
[57] *Wilcoxon v. Red Clay Consolidated School Dist. Bd. of Educ.*, 437 F. Supp. 2d 235, 247 (D. Del. 2006) (citing *Pierce v. Burns*, 185 A.2d 477, 479 (Del. 1962)). "Such privilege extends to communications made between persons who have a common interest for the protection of which the allegedly defamatory statements were made." *Pierce,* 185 A.2d at 479.
[58] *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974).
[59] D.I. 67 at 18.

12

harmed his reputation in any way. In fact, as defendant correctly points out, plaintiff's employment was terminated as a result of his failure to properly participate in the threat management investigation."[60] Plaintiff has failed to produce evidence contradicting defendant's representation. Moreover, the purported statements are not related to his occupation, trade, or profession.

In addition, "Delaware law has established that some defamatory statements may fall within a privileged class for which no damages may be recovered."[61] A qualified privilege can extend to statements made "between persons sharing a common interest for the protection of which those statements were made."[62] "The privilege reaches co-employees when the statements relate to the plaintiff's ability to perform his job."[63] Because the purported defamatory statements made in May 2007 relate to plaintiff's conduct and attitude in the workplace, the statements fall within the privilege. Furthermore, the statements contained in the two emails written by Du Pont's Security are not defamatory. First, they are statements made by someone other than defendant. Second, they relate directly to plaintiff's behavior in the workplace and his ability to perform his work duties. Therefore, summary judgment should be granted to defendant on all plaintiff's claims for defamation.

### 3. Answering Brief

In order to survive defendant's motion for summary judgment, plaintiff must

---

[60] *Id.*
[61] *Wilcoxon*, 437 F. Supp. 2d at 247.
[62] *Pierce v. Burns*, 185 A.2d 477, 479 (Del. 1962); *see also Battista v Chrysler Corp.*, 454 A.2d 286, 291 (Del. Super. Ct. 1982).
[63] *Park*, 1992 WL 714968 at *11.

present more than "bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue."[64] Plaintiff must present evidence that is not based on speculation or possible testimony that could be adduced at trial.

Below is the entirety of plaintiff's answering brief in opposition to defendant's motion for summary judgment:

> There is an outstanding issue here that could help or jog these perjurious Duponters' [sic] memories, by issuing a subpoena to order Dr. [sic] Bailey to appear at trial, since Dupont [sic] Counsel has not been able to depose her, so that she can explain how the May 22, 2007 letter appeared to her, even though Dupont [sic] Medical performs all of Dupont's [sic] "fitness for duty" evaluations, and can also identify the "unknown contact" and her instructions there.[65]

Even when construed liberally in light of the plaintiff proceeding *pro se* and considering plaintiff's allegations in his complaint, there simply is no evidence that rises to the level of a genuine issue of material fact requiring resolution by a reasonable fact finder. Therefore, this action should not proceed any further than it already has.

## IV. ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein, I recommend that:

Defendant's motion for summary judgment (D.I. 66) be GRANTED. As a result, plaintiff's action should be dismissed.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D.Del.LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. FED. R. CIV. P. 72(b). The objections and response to the

---

[64] *Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005).
[65] D.I. 69.

objections are limited to ten (10) pages each.

The parties are directed to the Court's standing Order in *Pro Se* matters for Objections Filed under FED. R. CIV. P. 72, dated November 16, 2009, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Dated: February 9, 2011 /s/ Mary Pat Thynge
                                               UNITED STATES MAGISTRATE JUDGE